UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SHANTELL S. NOBLE,

　　　　Plaintiff,

　　　v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

　　　　Defendant.

No. CV-13-00113-JTR

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** are cross-Motions for Summary Judgment. ECF Nos. 19, 27. Attorney Dana C. Madsen represents Plaintiff, and Special Assistant United States Attorney Daphne Banay represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 15. After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

## JURISDICTION

On September 15, 2005, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, along with a Title XVI application for supplemental security income, alleging disability beginning September 15, 2004. Tr. 17; 127. Plaintiff reported that she was unable to work due to depression and post-traumatic stress disorder. Tr. 102. Plaintiff's claim was denied initially and on reconsideration, and she requested a hearing before an administrative law judge (ALJ). Tr. 32-78.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

On January 23, 2008, ALJ Hayward C. Reed held a hearing. Tr. 394-435. On February 8, 2008, the ALJ issued a decision finding Plaintiff not disabled. Tr. 17-29. The Appeals Council declined review, and after Plaintiff filed a petition in District Court, the parties stipulated to a remand. Tr. 509-13. Subsequently, the Appeals Council issued a remand order that vacated the February 8, 2008 decision. Tr. 516-17.

ALJ R.J. Payne held a second hearing on March 19, 2010. Tr. 805-31. On April 8, 2010, the ALJ issued an opinion finding Plaintiff was not disabled. Tr. 463-78. The Appeals Council again remanded the case for additional proceedings. Tr. 503-07.

The most recent hearing in this case was held on July 20, 2011, at which vocational expert Deborah LaPoint, and Plaintiff, who was represented by counsel, testified. Tr. 792-804. ALJ R.J. Payne presided. Tr. 792. Subsequently, the ALJ denied benefits on August 12, 2011. Tr. 450-59. The ALJ noted that the Appeals Council "did not expressly vacate the prior unfavorable Administrative Law Judge decision, but remanded it for supplemental vocational expert information." Tr. 450. Additionally, the ALJ incorporated the prior opinion's findings and conclusions: "The claimant's medical history, as set forth in the prior unfavorable Administrative Law Judge decision is incorporated herewith for purposes of setting forth the facts contained therein, including the conclusions derived therefrom." Tr. 453. The Appeals Council declined review. Tr. 4-7. The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties and, thus, they are only briefly summarized here. At the time of the third hearing, Plaintiff was 34 years old, single and lived with her four-year old child and a roommate. Tr. 817. She completed high school, and trained at Apollo College for nine months to become a

medical administrative assistant. Tr. 818.

Plaintiff testified that she has worked as a cashier at a grocery store and at Walmart, as a caregiver, and she has stocked shelves. Tr. 819-20. Plaintiff said she quit her last job because it was hard and very stressful. Tr. 820. Plaintiff testified that every day she feels tired, sad and angry, and she sleeps poorly at night. Tr. 821-22. Plaintiff also testified that her roommate and her mother help care for her child. Tr. 824.

Plaintiff said she shops with her mother or her roommate because she gets panicky if she goes alone, and she does not leave home very often. Tr. 825. She likes watching television. Tr. 830. Plaintiff said she has problems with her back, and she estimated that she can sit for up to an hour and one half, and the amount of time she can stand varies. Tr. 826. She said she cannot walk very much because she does not have the energy for it, and she can lift about 20 pounds. Tr. 827. Plaintiff said she was unable to work because she could not handle being "out there" and with people. Tr. 827.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales, 402 U.S. 389, 401 (1971).* If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for

that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); see *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-94 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since September 15, 2004, her alleged onset date. Tr. 452. At step two, the ALJ found Plaintiff suffered from the severe

impairments of depressive disorder and personality disorder. Tr. 452. At step three, the ALJ found Plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments. Tr. 453. The ALJ found that the Plaintiff was able to perform a full range of work at all exertional levels, but with non-exertional limitations:

> The undersigned noted the claimant had the average ability to read, write and use numbers, but had either no limitations or, at times, moderate limitations in her ability to carry out detailed instructions. Moreover, she had moderate limitations in her ability to be in coordination or proximity to others without being distracted by them and moderate limitations when interacting with the public. Furthermore, she had moderate limitations in her ability to set realistic goals. Last, there was mental symptomology and she took prescribed medications for those symptoms. Yet, despite the effects of medications, she would be able to be reasonably attentive and responsive in a work setting or in her ability to carry out work assignments in a satisfactory manner.

Tr. 454. The ALJ found that Plaintiff is unable to perform past relevant work. Tr. 456. The ALJ found that, considering Plaintiff's age, education, work experience and residual functional capacity, job existed in significant numbers in the national economy that Plaintiff could perform, such as housekeeping cleaner, janitor, or industrial cleaner. Tr. 457. As a result, the ALJ found that Plaintiff was not disabled. Tr. 459.

## ISSUES

Plaintiff contends that the ALJ erred by improperly weighing the medical evidence. ECF No. 19 at 12-21.

## DISCUSSION

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 5

the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians. *Id.* A treating physician's opinion is afforded great weight because such physicians are "employed to cure and [have] a greater opportunity to observe and know the patient as an individual." *Sprague*, 812 F.2d at 1230. Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Lester*, 81 F.3d at 830.

**A.     Joyce Everhart, Ph.D.**

Plaintiff contends that the ALJ failed to properly reject the opinion of Dr. Everhart, and if her opinions are properly credited, Plaintiff is unable to sustain work. ECF No. 19 at 20-21.

On October 26, 2009, Dr. Everhart examined Plaintiff, and produced a narrative report and completed a Medical Source Statement of Ability to Do Work-Related Activities. Tr. 626-37. Dr. Everhart reviewed Plaintiff's medical records from 2004 through 2009. Tr. 626-28. Dr. Everhart also administered several objective medical tests. Tr. 630-33. Dr. Everhart noted that Plaintiff presented as mildly anxious and depressed. Tr. 633. She also noted that on the BDI-II, and BAI, Plaintiff's respective scores "appear[ed] to indicate an exaggeration of symptoms." Tr. 633. Additionally, Plaintiff's MMPI-2 revealed an invalid profile due to an elevated F scale. Tr. 634. Dr. Everhart noted Plaintiff was not compliant with her medication. Tr. 633. Dr. Everhart assessed Plaintiff with moderate limitations in her ability to understand and remember complex instructions, carry out complex instructions, make judgments on complex work-related decisions, and interact appropriately with supervisors and co-workers. Tr. 635-36.

The ALJ addressed Dr. Everhart's opinion in the previous April 8, 2010,

decision. Tr. 476. In that opinion, ALJ Payne noted that "this opinion is supported by substantial clinical testing," but did not explicitly indicate the weight accorded to the opinion. Tr. 476. In the present opinion, the ALJ addressed Dr. Everhart's opinion in the context of discussing the hypothetical posed to the vocational expert. Tr. 459. The ALJ noted the "vocational expert testified that considering Dr. Everhart's limitations alone, the claimant may have difficulty retaining a job over time." Tr. 459.[1] The ALJ concluded with respect to Dr. Everhart's assessed limitations: "reviewing the evidence in its entirety including the new evidence, the undersigned found these limitations to be unsupported. They appeared to be considered in haste and the evidence does not support it." Tr. 459.

The ALJ provided no examples, citation to the record, or specific explanation to support his conclusion that the new evidence failed to support the limitations, or that the assessments were "considered in haste." Tr. 459. "Merely to state that a medical opinion is not supported by enough objective findings 'does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim.'" *Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989), *quoting Embrey v. Bowen,* 849 F.2d 418, 421 (9th Cir. 1988). The ALJ's rejection of Dr. Everhart's assessment based upon the cursory conclusion does not constitute a specific and legitimate reason upon which to reject the opinion.

Plaintiff also argued that the ALJ erred by giving less weight to Dr. Everhart

---

[1]When asked to incorporate Dr. Everhart's moderate impairment ratings, the vocational expert testified, "Well, you would expect that the issue with supervisors may make it difficult for the individual to retain employment over time. A person who has difficulty with supervisors, or moderate limitations in interacting with supervisors, would likely have work background with a, a series of relatively short jobs, I believe." Tr. 802.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 7

and more weight to Dr. Moore's opinion because Dr. Moore "had the benefit of the entire medical record unlike Dr. Everhart." ECF No. 19 at 20. In the present opinion, the ALJ stated that he gave significant weight to the opinion from non-examining physician Margaret Moore, Ph.D., "because she had the benefit of the entire medical record, unlike Dr. Everhart and other acceptable medical source opinions." Tr. 458.

An examining physician's opinion is generally entitled to more weight than a non-examining physician's opinion. *Lester*, 81 F.3d at 830. "The contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001), citing *Magallanes*, 881 F.2d at 752; see also *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 199) ("The nonexamining physicians' conclusion, with nothing more, does not constitute substantial evidence, particularly in view of the conflicting observations, opinions, and conclusions of an examining physician.").

If the ALJ's proffered reason was valid, every non-examining provider's opinion that was obtained *after* an examining or treating physician opinion would be entitled to the greatest weight in a social security disability case. Yet under the regulations, non-examining physician opinions are generally entitled to less weight than treating and examining doctors. *See Lester*, 81 F.3d at 830 (treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion.).

As such, the fact that Dr. Moore, a nonexamining physician, possibly reviewed records that Dr. Everhart, an examining physician, did not review, is an invalid reason, standing alone, for rejecting Dr. Everhart's opinion. The errors in this case necessitate remand to reconsider the weight given to the medical opinions, and the ALJ should reconsider the appropriate weight to give to the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 8

opinion from Dr. Everhart.

**B.    Kayleem Islam–Zwart, Ph.D.** [2]

Plaintiff argues that the ALJ erred by rejecting the opinion of Dr. Islam-Zwart. ECF No. 28 at 3. Plaintiff contends that the ALJ erred by rejecting this opinion on the basis that the assessed GAF score was inconsistent with the limitations he described, and because Plaintiff's test results on the PAI indicated she exaggerated her complaints. ECF No. 28 at 3-4.

On May 20, 2005, Kayleem Islam–Zwart, Ph.D., examined Plaintiff and produced a narrative report dated May 23, 2005, and a Psychological/Psychiatric evaluation form. Tr. 188-95. The doctor administered several objective medical tests. Tr. 189-90. In the narrative report, Dr. Islam-Zwart noted that Plaintiff's PAI results reflected exaggerated complaints, and he added that such results are often associated with a cry for help or overly negative outlook on life. Tr. 190. He assigned a GAF of 55. Tr. 190. Dr. Islam-Zwart concluded that despite the chronic nature of Plaintiff's symptoms, "it is possible that she can achieve some degree of symptom control with appropriate treatment." Tr. 190.

In the form, Dr. Islam-Zwart assessed Plaintiff with one marked limitation in the ability to relate appropriately to co-workers and supervisors, and with four

---

[2]While Plaintiff contends in her opening brief that the ALJ erred by improperly rejecting the opinions of Dr. Islam-Zwart and Dr. Dalley, she did not provide related briefing or analysis until her reply brief. ECF No. 19 at 19; ECF No. 28. Ordinarily, the court will not review issues that are not adequately briefed in Plaintiff's opening brief. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008). In this case, the court will review the issues because the Government responded fully to these arguments, and thus will not suffer prejudice.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 9

moderate limitations in the abilities interact appropriately in public contacts, respond appropriately to and tolerate the pressures and expectations of a normal work setting, care for self, including personal hygiene and appearance, and control physical or motor movements and maintain appropriate behavior. Tr. 194.

The ALJ found, in the prior decision, the moderate to marked limitations assessed by Dr. Islam-Zwart were "not consistent with the [GAF] rating of 55" and the limitations did not result in total disability. Tr. 475. The ALJ also noted that the PAI reflected exaggerated complaints. Tr. 475.

First, an ALJ properly considers the inconsistency of conclusions with the physician's own findings in rejecting a physician's opinion. *Johnson v. Shalala*, 60 F.3d 1428, 1432-33 (9th Cir. 1995); *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989); *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986). The existence of an inconsistency between a doctor's findings and conclusions is a specific and legitimate reason for rejecting that opinion. *See Young,* 803 F.2d at 968 (treating doctor's conclusory opinion that claimant was disabled was properly rejected by ALJ when it was internally inconsistent and not consistent with doctor's prior medical reports).

The Global Assessment of Functioning ("GAF")[3] score is the clinician's judgment of the individual's overall level of functioning. See DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, DSM-IV, 30-32 (4th ed. 1994). GAF scores of 31 to 40 represent some impairment in reality testing, or serious impairment in several areas such as work or school, family relations, judgment, thinking, or mood; GAF scores of 41 to 50 represent serious symptoms or impairment in social, occupational or school functioning; GAF scores of 51 to 60 represent moderate symptoms or difficulty in those areas; and scores of 61 to 70

---

[3]The 2013 DSM–V dropped the use of the GAF. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 16 (5th ed. 2013).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 10

represent mild symptoms with a reasonably good level of functioning.  *Id.* at 32.  An ALJ has no obligation to credit or even consider GAF scores in the disability determination.  *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy").

The Psychological/Psychiatric Evaluation form defined a moderate limitation as, "significant interference with basic work-related activities," and a marked limitation as "very significant interference with basic work-related activities." Tr. 192.

In this case, Dr. Islam-Zwart assessed Plaintiff's GAF score at 55, which indicates moderate impairments.  Given the definition of a moderate GAF score between 51-60, as well as the definition of "marked," and "moderate" in the form, it is not clear that a person could never simultaneously have marked impairments and a moderate GAF score.  Moreover, an ALJ is required to explain how this assessment is necessarily inconsistent with opining that the patient has "marked" and "moderate" impairments.  *See Reddick,* 157 F.3d at 725.  Additionally, when providing reasons for rejecting opinion evidence, an ALJ must provide "a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his or her] interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725.  Finally, the ALJ must do more than merely state conclusions, but instead, "must set forth [his or her] own interpretations and explain why they, rather than the doctors', are correct." *Id.* (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

To the extent the ALJ rejected Dr. Islam-Zwart's opinion as incompatible with the GAF score, the ALJ failed to explain why a GAF score, a generalized assessment, superseded Dr. Islam-Zwart's more precise opinions as to Plaintiff's ability to work.  As a global reference intended to aid in treatment, a GAF score does not itself necessarily reveal a particular type of limitation and is not an

assessment of a claimant's ability to work.  Here the ALJ failed to explain how Plaintiff's "moderate" GAF score is inconsistent with Dr. Islam-Zwart's assessment that Plaintiff had one "marked" impairment in her ability to relate appropriately to co-workers and a supervisor, and multiple "moderate" impairments including the ability to interact with the public, respond appropriately to and tolerate the pressures and expectations of a normal work setting, care for herself including hygiene and appearance, and maintain appropriate behavior.  Tr. 194.  Under these circumstances, the ALJ erred by finding, without explaining, that Dr. Islam-Zwart's assessment was internally inconsistent.

Moreover, the ALJ relied upon Plaintiff's PAI test results that reflected "exaggerated complaints," as a basis for giving little weight to Dr. Islam-Zwart's findings.  Tr. 475.  Dr. Islam-Zwart interpreted Plaintiff's test results somewhat differently from the ALJ.  Dr. Islam-Zwart explained that Plaintiff's profiled reflected exaggerated complaints that are often a cry for help or merely reflective of an overly negative outlook on life.  Tr. 190.  He indicated that she had decreased self-esteem and difficulty concentrating.  Tr. 190.

An ALJ is not at liberty to substitute his own views for uncontroverted medical opinion. *See Nguyen v. Chater*,172 F.3d 31, 35 (1st Cir.1999) ; *Balsamo v. Chater*, 142 F.3d 75, 81 (2nd Cir. 1998) (ALJ is free to choose between properly submitted medical opinions but is not free to set his own expertise against that of a physician); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir.1996) (ALJ must not succumb to the temptation to play doctor and make independent medical findings).  Thus, because the ALJ failed to provide an explanation of how the GAF score and the marked and moderate limitations are fatally inconsistent, and because the ALJ impermissibly substituted his own interpretation of Plaintiff's test results, Dr. Islam-Zwart's opinion must be reconsidered on remand.  The ALJ failed to provide specific and legitimate reasons supported by substantial evidence for rejecting the opinions from Dr. Islam-Zwart.

### C.     Mahlon Dalley, Ph.D.

Plaintiff argued that the ALJ did not articulate a specific and legitimate reason for rejecting Dr. Dalley's opinions. ECF No. 28 at 2-3.

On October 15, 2004, Dr. Dalley adopted the findings and conclusions in a report prepared by Donald Crawford, MS, LMHC, after Mr. Crawford examined Plaintiff. Tr. 174. The report indicates that based upon observations, reported symptoms and Plaintiff's MMPI-2 profile, Plaintiff meets the criteria for diagnosis of major depressive disorder and personality disorder not otherwise specified. Tr. 173. The report concluded that Plaintiff's symptoms were "likely to temporarily interfere with her ability to tolerate the pressures and expectations associated with a normal work environment." Tr. 174.

On March 14, 2005, Dr. Dalley adopted the findings and conclusions in a report prepared by Abigail Osborne, M.S. Tr. 183. The report concludes that based upon invalid MMPI-2 scores and low effort on the MACE, Plaintiff meets the criteria for malingering. Tr. 183. The report concluded, "[a]t this time, she does not appear to have a psychological disability that would prevent her from working." Tr. 183.

The ALJ gave little weight to Dr. Dalley's October, 2004, opinion because five months later Dr. Dalley opined that Plaintiff did not appear to have a psychological disability that would prevent her from working. Tr. 475. The ALJ added that the opinion was "supported by substantial test results" that indicated Plaintiff was malingering. Tr. 475. As noted above, the ALJ properly considers inconsistencies within a physician's findings in determining the weight to give the opinion. *Johnson,* 60 F.3d at 1432-33; *Magallanes,* 881 F.2d at 751; *Young*, 803 F.2d at 968. In this case, the ALJ properly rejected Dr. Dalley's first opinion, in light of the subsequent examination, less than six months later, concluding that Plaintiff was not under any disability that would prevent her from working. The ALJ's reason for giving little weight to the first opinion was specific and legitimate

and supported by substantial evidence.

**D.     Dennis R. Pollack, Ph.D.**

Finally, Plaintiff contends that the ALJ erred by improperly rejecting the opinion of Dr. Pollack on the basis that the report contained internal inconsistencies and was not supported by the record as a whole.[4]  ECF No. 19 at 20.

On February 20, 2008, Dr. Pollack examined Plaintiff, administered several objective tests, reviewed Plaintiff's medical records, and produced a narrative report and completed a Mental Medical Source Statement.  Tr. 374-84.  Dr. Pollack assessed Plaintiff with two marked limitations:  in the ability to perform scheduled activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  Tr. 382.  He also assessed Plaintiff with moderate limitations in her ability to accept instructions and respond appropriately to criticism from supervisors.  Tr. 382.  Dr. Pollack noted that Plaintiff's "attempts at malingering interfere with one developing a clear understanding of her problems."  Tr. 379.

In the present decision, the ALJ addressed Dr. Pollack's opinion within the context of analyzing the vocational expert's opinion.  Tr. 458.  The ALJ rejected the vocational expert's opinion, in part, because she relied upon the opinion of Dr. Pollack.  Tr. 458.  The ALJ explained that Dr. Pollack's report was entitled to little

---

[4]Plaintiff also argued that the ALJ erred in giving little weight to Dr. Pollack's opinion on the basis that he relied largely on Plaintiff's self-report.  ECF No. 19 at 20.  However, the ALJ did not rely upon this reason for discounting Dr. Pollack's opinion, but instead used this reason for discounting the vocational expert testimony.  Tr. 458.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 14

weight because it was internally inconsistent. Tr. 458. Specifically, Dr. Pollack assigned a GAF of 55, indicating moderate symptoms, but also found Plaintiff had marked limitations. Tr. 458. Additionally, the ALJ found that "the objective record as a whole" did not support marked limitations. Tr. 458. The ALJ did not elaborate, explain or provide examples from the record.

In the April 8, 2010, opinion, the ALJ analyzed Dr. Pollack's opinion and gave it "no weight" for three reasons: (1) it was inconsistent with the GAF assessment; (2) the "MMPI-2 results were not interpretable suggesting exaggeration of symptoms;" and (3) "[t]his psychologist <u>always</u> finds moderate or marked limitations within performing activities within a schedule, maintaining regular attendance, and being punctual … and completing a normal workday… and performing at a consistent pace… which of course supports disability per vocational expert testimony in past hearings." Tr. 476).

To the extent the ALJ rejected Dr. Pollack's opinion as incompatible with the GAF scores, as explained above, the ALJ failed to explain how Plaintiff's "moderate" GAF score is inconsistent with Dr. Pollack's assessment that Plaintiff had two "marked" impairments in his ability to complete a full workweek. Tr. 382. Under these circumstances, the ALJ erred by finding, without explaining, that Dr. Pollack's assessment was internally inconsistent.

The ALJ's second reason for rejecting Dr. Pollack's opinion is also flawed. Plaintiff also contends that the ALJ erred by providing a "boilerplate" statement that Dr. Pollack's assessment that Plaintiff had marked impairments was not supported by the record as a whole. It is insufficient for an ALJ to reject the opinion of a treating physician by merely stating, without more, that it is inconsistent with other evidence in the record. *See Embrey v. Bowen,* 849 F.2d 418, 421 (9th Cir. 1988). The ALJ provided additional discussion of Dr. Pollack's opinion in the second decision, but neither discussion provides explanation, citation to the record, or meaningful analysis to support for the ALJ's cursory

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 15

assertion. As analyzed *supra,* this was an invalid reason upon which to discount Dr. Pollack's opinion. See Tr. 458; 475-77.

The third reason the ALJ provided for rejecting Dr. Pollack's opinion was apparently based upon the ALJ's perceived bias against Dr. Pollack, and this error requires remand to a new ALJ. The ALJ plays a crucial role in the disability review process. *Miles v. Chater*, 84 F.3d 1397, 1401 (11th Cir. 1996). The Eleventh Circuit noted that the impartiality of the ALJ is critical to determinations of disability:

> Not only is [an ALJ] duty-bound to develop a full and fair record, [the ALJ] must also carefully weigh the evidence, giving individualized consideration to each claim that comes before him [or her]. Because of the deferential standard of review applied to [the] decision-making, the ALJ's resolution will usually be the final word on a claimant's entitlement to benefits. The impartiality of the ALJ is thus integral to the integrity of the system. *See Johnson v. Mississippi,* 403 U.S. 212, 216, 91 S. Ct. 1778, 1780, 29 L. Ed. 2d 423, 427 (1971) (citations omitted) ("Trial before "an unbiased judge is essential to due process.").

*Miles*, 84 F.3d at 1401. The facts presented in *Miles* are similar to those in this case. In *Miles,* the ALJ analyzed the medical opinion evidence and added that a physician expert "concluded (as he usually does) that she was totally disabled." *Miles,* 84 F.3d at n.4). The *Miles* court found that this comment from the ALJ, "without any evidence in support thereof, reflect that the process was compromised." *Id.* at 1401. The *Miles* court held that the Plaintiff was "entitled to an unbiased reconsideration of her application for benefits before a different ALJ." *Id.; see also Reed v. Massanari,* 270 F.3d 838, 844 (9th Cir. 2001)(remand to a new ALJ required after ALJ opined the two available specialists "are totally unreliable" because they conclude "everybody is disabled.").

In this case, without supporting evidence in the record, the ALJ rejected Dr. Pollack's opinion because the ALJ's personal belief that Dr. Pollack "<u>always</u> finds

moderate or marked limitations" in the categories related to working a full workweek. Tr. 476). As in *Miles*, the ALJ's comment in this case reflects that the integrity of the process was compromised, and in the case at bar, Plaintiff is similarly entitled to an unbiased reconsideration of her application for benefits before a new ALJ. *See* 20 C.F.R. § 404.940 (providing as a remedy the holding of a new hearing before another ALJ); *see also Ventura v. Shalala*, 55 F.3d 900 (3d Cir. 1995).

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is not supported by substantial evidence and is based on legal error. On remand, the new ALJ should reconsider the proper weight to give to each medical opinion in the record. Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 19,** is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 27**, is **DENIED**.

3. An application for attorney fees may be filed by separate motion. The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff, and the file shall be CLOSED.

**IT IS SO ORDERED**. The District Court Executive is directed to file this Order, provide copies to the parties, enter judgment in favor of defendant, and **CLOSE** this file.

DATED May 12, 2014.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 17